IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 8, 2009

## STATE OF TENNESSEE v. MICHAEL EDWARDS

**Appeal from the Circuit Court for Coffee County**
**No. 36, 476     Charles Lee, Judge**

**No. M2009-01208-CCA-R3-CD - Filed February 2, 2010**

On December 16, 2008, after pleading guilty to two counts of sale of marijuana and one count of aggravated assault, the Defendant, Michael Edwards, was sentenced to four years in the Department of Correction, all but 120 days of which was ordered to be served on probation. The trial court issued probation violation warrants for the Defendant on March 13 and April 14, 2009. Following an evidentiary hearing on April 23, 2009, the Coffee County Circuit Court revoked his probation. In this appeal, the Defendant contends that his probation was revoked in error. After our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Kevin R. Askren, Assistant Public Defender, Tullahoma, Tennessee, for the appellant, Michael Edwards.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Mickey Layne, District Attorney General; and Marla Holloway, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION

### Factual Background

The probation violation warrants issued against the Defendant alleged that he violated two terms of his probation: his agreements to "obey the laws of the United States, or any

State in which [he] may be, as well as any municipal ordinances" and "not engage in any assaultive, abusive, threatening, or intimidating behavior." In a March 10, 2009 affidavit of complaint, the Defendant's then ex-girlfriend, Christin Armstrong, alleged that the Defendant had been continually harassing and threatening her. He was arrested on March 10, leading to the March 13 probation violation warrant. On April 14, the Defendant was arrested for aggravated kidnapping, aggravated assault, and violation of an order of protection, leading to that day's probation violation warrant.

Testimony at the Defendant's probation revocation hearing clarified the events underlying the two probation violation warrants. Jennifer Singleton, a domestic violence assistant, testified that she helped Ms. Armstrong obtain an order of protection against the Defendant. Ms. Armstrong showed Ms. Singleton several threatening text messages from the Defendant, and she played a threatening voice mail message.

Georgina Gordon, Ms. Armstrong's aunt, testified that Ms. Armstrong began living with her while the Defendant was in jail, but had lived elsewhere for about three weeks prior to the hearing. Ms. Gordon corroborated Ms. Singleton's testimony that the Defendant sent Ms. Armstrong several threatening text messages, including some messages after being released from jail in which he claimed to have been on Ms. Gordon's property looking into her windows. Later, all four of Ms. Armstong's car's tires were slashed, as well as three of Ms. Gordon's car's tires; the Defendant told Ms. Gordon he had arranged to have the tires slashed, although he did not damage them himself. Ms. Gordon then, on March 23, 2009, obtained a no-contact order against the Defendant. The Defendant signed the no-contact order, which, among other things, forbade him from being on Ms. Gordon's property.

Ms. Gordon testified that the Defendant came to her residence on April 10, however, at about 1:00 or 2:00 a.m. At that time, Ms. Armstrong observed the Defendant looking into the residence's windows. Ms. Gordon walked outside twice; she saw the Defendant the second time, and she yelled at him to leave Ms. Armstrong alone. She followed the Defendant to his car and continued to argue with him as he got into the driver's seat. Ms. Gordon grabbed the Defendant's door, at which time the Defendant "took off and had [her] by the arm and let [her] go and [she] tumbled down the road." "The next thing [Ms. Gordon] remember[ed]," she was in the car with the Defendant as he pulled into her driveway and let her out. Ms. Gordon admitted she had been drinking in her residence before the Defendant arrived. Her injuries were photographed by police, and she sought charges against the Defendant.

Ms. Armstrong, now reconciled with the Defendant, testified on his behalf. She said that on April 10, Ms. Gordon walked up to the Defendant's car as he originally pulled up to the house and tried to hit the Defendant. She then sat down in the car's passenger seat, and

the car "pulled off." A pursuit ensued a few minutes later when the Defendant, his phone apparently lying open in his car, called Ms. Armstrong to allow her to hear Ms. Gordon hitting and yelling at him. Ms. Armstrong was able to locate them and follow them for a few minutes, at which time they returned to Ms. Gordon's house.

The Defendant testified that he was not violent toward Ms. Gordon in any way and that she entered his car voluntarily to talk. He acknowledged signing the no-contact order and admitted that he understood he was not to approach her property.

The trial court declined to find by a preponderance of the evidence that the Defendant had committed aggravated kidnapping or aggravated assault. Relying on Ms. Singleton's testimony and Ms. Armstrong's affidavits of complaint, however, the trial court found that the Defendant had harassed Ms. Armstrong. The trial court also found that the Defendant had violated the no-contact order Ms. Gordon obtained against him.

In this appeal, the Defendant does not argue that the trial court erred by finding that the Defendant violated the conditions of his probation. Instead, he argues that the trial court erred by ordering that the balance of his sentence be served in confinement.

**Analysis**

A trial judge is vested with the discretionary authority to revoke probation if a preponderance of the evidence establishes that a defendant violated the conditions of his or her probation. See Tenn. Code Ann. §§ 40-35-310, -311(e); State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001). "The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991).

When a probation revocation is challenged, this Court has a limited scope of review. We will not overturn a trial court's probation revocation absent an abuse of discretion. See Shaffer, 45 S.W.3d at 554. For an appellate court to be warranted in finding that a trial judge erred his or her discretion by revoking probation, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." Id.

The Defendant appears to argue that, even though the trial court properly found that the Defendant violated the conditions of his probation, the trial court erred by ordering that probation be revoked. However, the Defendant argues as if the probation violation hearing was an original sentencing hearing. At a probation revocation hearing, once the proof establishes that a violation of probation occurred, whether to revoke the suspended sentence

rests in the sound discretion of the trial court.  See State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

The record contains substantial evidence supporting the trial court's conclusion that the Defendant engaged in abusive, threatening, or intimidating behavior as forbidden by the conditions of his probation.  It also contains substantial evidence that he violated the no-contact order Ms. Gordon obtained against him.  The trial court did not abuse its discretion in revoking the Defendant's probation.

**Conclusion**

Based on the foregoing authorities and reasoning, we affirm the order of the trial court revoking the Defendant's probation and ordering that the balance of the sentence be served in confinement.

_____
DAVID H. WELLES, JUDGE